JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALETHEIA RESEARCH AND MANAGEMENT, INC. <br><br> Plaintiff, <br><br> v. <br><br> HOUSTON CASUALTY COMPANY, <br><br> Defendant. | Case No. CV 11-03001 ODW (JCx) <br><br> Order **GRANTING in Part** and **DENYING in Part** Defendant's Motion for Summary Judgment[17] <br><br> **Order GRANTING** Plaintiff's Motion for Summary Adjudication [14] |

## I. INTRODUCTION

Pending before the Court are Aletheia Research and Management, Inc.'s ("Plaintiff") Motion for Summary Adjudication (Dkt. No. 14) and Houston Casualty Company's ("Defendant") Motion for Summary Judgment (Dkt. No. 17). After careful consideration of each parties' briefing and evidence submitted, the Court deems the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the following reasons, the Court **GRANTS in Part** and **DENIES in Part** Defendant's Motion in part and **GRANTS in Part** and **DENIES in Part** Plaintiff's Motion.

## II. UNDISPUTED FACTS

On April 8, 2011 Plaintiff initiated an action in this court against its insurer, Defendant Houston Casualty Company, for declaratory relief, breach of insurance contract and insurance bad faith. [1]. Distilled to its essence, Plaintiff alleges that Defendant is obligated to reimburse it for defense costs incurred in connection with defense of a cross complaint in Los Angeles Superior Court in an action styled *Aletheia Research and Management, Inc., et al. Vs. Proctor Investment Distributor LLC*, Case No. SC 106700. It is further alleged that defendant's refusal to reimburse those defense costs is without justification and is contrary to the express protections afforded under the policies. Moreover, it is alleged that the refusal to reimburse defense costs under the policies was oppressive, fraudulent and despicable, warranting the imposition of exemplary damages.

Defendant's motion is predicated upon the fact that the policy triggered by this claim is the 2008 -09 Policy, the limits of which have been completely exhausted by payment of a settlement in an unrelated matter. Therefore, Defendant argues, it has no further obligations to its insured (Plaintiff) under that policy.

### A. THE COVERAGE

Defendant issued Investment Adviser and Fund Professional and Directors and Officers Liability Insurance Policy H707-60079 to Plaintiff with an effective policy period From January 30, 2007 through January 30, 2008 (the 2007-08 Policy) on a Claims Made basis[1] with aggregate limits of liability of $5 million subject to a $150,000 retention for claims made under Insuring Agreements A(1), A(3), B(1), B(3), C and $75,000 for Claims made under Coverage C. [Cotkin Decl, Exh. F].

That policy was renewed by the issuance of policy number H708-60061 with a policy period from January 30, 2008 through January 30, 2009 ("2008-09 Policy"). (Undisputed Fact ("UF") No. 1; Declaration of Nicholas W. Sarris ("Sarris Decl.") ¶ 3, Ex. A.) That policy was issued on a Claims Made basis (Sarris Decl. Ex. B.) The parties appear to be in agreement that this policy has been exhausted.

---

[1] "Under a 'claims-made' policy, the insurer generally is responsible for loss resulting from claims made during the policy period no matter when the liability-generating event took place." *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 885 n.8 (Ct. App. 1992).

The 2008-09 policy was subsequently renewed by the issuance of Policy H709-60170 with effective dates from March 1, 2009 to April 30, 2010, (Endorsements 21 and 22 of the "2009-10 Policy") with the same limits of liability as the prior policies. (UF No. 2; Sarris Decl. ¶ 4, Ex. B.)

1.  Insuring Agreement

The policies expressly provide as follows:

> This is a Claims Made Policy. Except as may be otherwise provided herein, the coverage under this policy is limited to liability for Wrongful Acts for which claims are first made while the policy is in force and which are reported to the insurer no later than sixty (60) days after the termination of the policy. <u>The limit of liability available to pay Loss, including judgment or settlement amounts, shall be reduced by amounts incurred for Costs, Charges and Expenses as provided for under the policy.</u> Further note that amounts incurred for Costs, Charges and Expenses shall be applied against the applicable retention amount. (Emphasis added.)

By correspondence from coverage counsel, acting on behalf of defendant, it was acknowledged that coverage triggered by the underlying action, if any, would be afforded under coverage A(3) and the individual defendants appear to be "Insureds" as that term is defined in the policies. [Cotkin Decl, Exh. F].

The Insuring Agreement as respects Coverage A(3) provides as follows:

Insured Adviser Professional and Management Liability Insurance and Corporate Reimbursement.

(3) The Insurer shall pay on behalf of the **Insured Adviser Loss** which the **Insured Adviser** pays as indemnification to the Insured **Person(s)** arising from a **Claim** first made during the **Policy Period** for any **Wrongful Act(s)**. (Emphasis in original.)

Section II contains the Definitions. The following definitions are relevant to the court's inquiry.

> **C. Claim** means:
>
> (1)  Any written demand for monetary damages against any **Insured(s)** commenced by receipt of such demand by the **Insured(s)**;

3

(2) any civil, [ . . .] proceeding (including any appeal therefrom) commenced by the service of a complaint or similar pleading and initiated against the **Insured(s)**, [ . . .];

D. **Costs, Charges and Expenses** mean reasonable and necessary legal fees and expenses (including expert fees) and costs of attachment or similar bonds incurred by the Insured(s) in defense of any Claim, [subject to certain exceptions not here relevant.]

R. **Interrelated Wrongful Act(s)** mean any **Wrongful Act(s)** which has as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

S. **Loss** means, damages, judgment, settlements and **Costs, Charges and Expenses** incurred by the **Insured(s)** including punitive damages where insurable under the law pursuant to which this Policy shall be construed**;** [subject to certain exceptions not here relevant.]

Z. **Wrongful Act(s)** means:
(2) with respect to Insuring Agreements A(2), A(3), B(2) and B(3), any actual or alleged breach of duty, neglect, error, misstatement, misleading statement omission or negligent act by the **Insured Person(s)** in its capacity as such, or any matter claimed against it solely by reason of its status as an **Insured Persons(s)**

**B. FACTS GIVING RISE TO THE UNDERLYING DISPUTE**

Up until December 2007, Plaintiff and Proctor Investment Managers, LLC ("Proctor") were engaged in a series of contractual agreements. (UF No. 8; Sarris Decl., Ex. D.) In December of 2007, Proctor and Plaintiff's legal counsel began to exchange a series of letters regarding their agreements,

which ultimately culminated in Plaintiff terminating the agreements on December 18, 2007. (*Id.*) In response, on January 25, 2008 Proctor filed, but never served, a Summons with Notice ("Summons with Notice") against Plaintiff in New York State Court ("2008 New York Action"). (UF No. 7; Sarris Decl. ¶ 5, Ex. C) The Summons with Notice listed the nature of the action as one for breach of contract, unjust enrichment, breach of fiduciary duty, requesting declaratory and injunctive relief. (*Id.*)

On January 29, 2008, Proctor and Plaintiff agreed to a litigation standstill ("standstill agreement"), whereby Proctor agreed to dismiss the 2008 New York Action and neither party would file another lawsuit for forty days. (Sarris Decl. ¶ 6, Ex. D.) On January 30, 2008, true to the standstill agreement, Proctor dismissed the New York Action against Plaintiff by filing a Notice of Voluntary Discontinuance (UF No. 10; Sarris Decl. ¶ 7, Ex. E) and also provided Plaintiff with a "courtesy copy" of the Summons with Notice (UF No. 9; Sarris Decl. ¶8, Ex. F).

On or about April 2, 2008, Defendant received a copy of the Summons with Notice and Notice of Voluntary Discontinuance and was informed "[t]his is just for notice purposes as this has been discontinued and there are no allegations." (UF No. 11; Sarris Decl. ¶9, Ex. G.) On April 24, 2008, Defendant acknowledged receipt of the Summons with Notice and Notice of Discontinuance and assigned the Summons with Notice a claim number. (UF No. 12; Sarris Decl. ¶ 10, Ex. H.)

### C. 2010 LITIGATION AND TENDER

Despite trying to avoid litigation by entering into the standstill agreement, on or about February 16, 2010 Proctor initiated an action styled *Proctor Investment Managers v. Aletheia Research Management, Inc., et al* in the Supreme Court of the State of New York, Case no. 10600397 [Complaint ¶ 10 Doc 1] (UF Nos. 13-15; Sarris Decl. ¶¶ 11-14, Exs. I, J and K.) Plaintiff tendered the 2010 Proctor lawsuit to Defendant on June 14, 2010. (UF No. 16; Sarris Decl. ¶ 14, Ex. L.) On June 22, 2010 Defendant acknowledged receipt of the 2010 lawsuit and informed Plaintiff that it had assigned an attorney to evaluate and monitor the matter. (UF No. 17; Sarris Decl. ¶ 15, Ex. M.)

On August 16, 2010, Defendant denied coverage for the Proctor Action. (UF Nos. 20-22; Sarris Decl. ¶¶ 19-20, Exh. P, Q and R.) That declination of coverage was reasserted by correspondence dated November 30, 2010 [Exh G to Cotkin Decl.] In the November 30, 2010 denial of coverage letter, defendant cited the following basis for its position of "no coverage": (1) the Summons and Notice

1  tendered under the 2008-09 policy satisfied the definition of "claim" in that it was notice of a civil
2  proceeding commenced by service of a complaint or similar pleading against an insured.  (2) The
3  Summons with Notice as well as the New York Proctor action have as a common nexus the same facts,
4  circumstances and events and therefore allege Interrelated Wrongful Acts and are deemed to be a single
5  Claim that was first made during the 2008-09 Policy Period.  It appears that the limits of the  2008-09
6  Policy have been exhausted by payment of a settlement in an unrelated matter.

7         Defendant initially denied coverage on the additional ground that notice of the Summons with
8  Notice  was not timely provided.  That was subsequently acknowledged to have been in error.  Coverage
9  was also initially denied on the grounds that the Los Angeles Superior Court Cross-Complaint against
10 the Plaintiff sought only equitable relief and not damages and therefore was not covered.  This position
11 lacks merit.  The prayer of the Cross-complaint [Doc 17-14] clearly requests <u>damages</u> for breach of a
12 number of agreements.

13         On April 8, 2011. Plaintiff filed this action (Dkt No.1) asserting claims for: (1) declaratory relief
14 re: the duty to defend; (2) declaratory relief re: the duty to pay reasonable defense costs; (3) breach of
15 insurance contract; (4) insurance bad faith; and (5) declaratory relief re: the  duty to indemnify.  (*Id.*)
16 Defendant moves for Summary
17  Adjudication as to all of Plaintiff's claims.  (Def.'s Mot. at 1.)

18

19                    **III.   LEGAL STANDARD**

20       Summary judgment is appropriate when the evidence, viewed in the light most favorable to the
21  nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party
22  is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©.  Evidence the court may consider
23  includes the pleadings, discovery and disclosure materials, and any affidavits on file.  Fed. R. Civ. P.
24  56(c)(2).

25       The moving party bears the initial burden of establishing the absence of a genuine issue of
26  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden
27   may be met by "'showing' – that is, pointing out to the district court – that there is an absence of
28   evidence to support the nonmoving party's case." *Id*. at 325.  Once the moving party has met this
    burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a

6

genuine issue for trial. *Id*. at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

It is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

## IV. DISCUSSION

"Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. Such intent is to be inferred, if possible, solely from the written provisions of the contract. If contractual language is clear and explicit, it governs." *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 390 (2005) (internal quotations and citations omitted). In California, courts construe any ambiguities in a manner that protects the expectations of a reasonable policyholder. *Blue Shield of Cal. Life & Health Ins. Co. v. Superior Ct.*, 192 Cal. App. 4th 727, 737 (Ct. App. 2011). However, disagreement regarding the

meaning of a phrase does not necessarily make the phrase ambiguous. *Powerine*, 37 Cal. 4th at 390-91.

### A.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's motion for Summary Judgment is based on the following arguments: (1) the Summons with Notice is a Claim or, in the alternative, a notice of Wrongful Act(s) and, therefore, the *Proctor Action* relates back to the 2008-09 Policy; (2) Defendant does not have a duty to advance or pay defense costs; (3) Defendant has not breached the insurance contract; (4) Defendant has no duty to indemnify Plaintiff for the *Proctor Action*; and, (5) Defendant has not acted in bad faith by failing to defend the *Proctor Action*. (Def.'s Mot. at 1-3.) The main thrust of Defendant's arguments is that the *Proctor Action* falls under the 2008-09 Policy. (*Id.*) The Court addresses Defendant's arguments to the extent necessary.

### 1.  THE SUMMONS WITH NOTICE DID NOT CONSTITUTE A CLAIM

Defendant argues the 2008 Summons with Notice caused the 2010 *Proctor Action* to relate back to the 2008-09 Policy for two reasons. (Def.'s Mot. at 2.) First, Defendant contends the Summons with Notice falls under the Policies' definition of a Claim because (1) it was a written demand for monetary damages commenced against the Plaintiff, or in the alternative (2) it was a civil proceeding commenced by a pleading similar to a complaint. (*Id.*) Defendant also contends that when Plaintiff gave Defendant the Summons with Notice it constituted notice of a Wrongful Act(s) under the policy. The Court examines each of these contentions in turn.

#### a.  "Claim" As Defined By the Policies

The Parties disagree as to whether the Summons with Notice is a Claim under the Policies. (Def.'s Mot at 15-21; Pl.'s Opp'n at 1.) To interpret a term, courts first look to the language of the insurance contract. *Am. Int'l Underwriters Ins. Co. v. Am. Guarantee and Liab. Ins. Co.*, 181 Cal. App. 4th 616, 622 (Ct. App. 2010). The Policies define Claim, in relevant part, as:

> (1) Any written demand for damages against any Insured(s) commenced by receipt of such demand by the Insured(s);

8

> (2) Any civil, judicial, administrative, regulatory or arbitration proceeding (including any appeal therefrom) commenced by the service of a complaint or similar pleading and initiated against the Insured(s), including any administrative or regulatory investigation commenced by a formal order of investigation;

(UF No. 3; Sarris Decl. ¶ 3, Exh. A.)

To begin, Defendant avers that the Notice with Summons was a Claim because when Plaintiff received the Summons with Notice on January 30, 2008, Plaintiff was in receipt of a "written demand for damages." (Def.'s Mot. at 15-17.) Plaintiff disagrees and argues that when it received the courtesy copy of the Summons with Notice it was no longer a demand and, therefore, not a Claim. (Pl.'s Opp'n at 5-7.) Plaintiff's point is well taken. Indeed, when it was received by Plaintiff on January 30, 2008, Proctor had voluntarily dismissed the New York Proctor action   (UF No. 10; Sarris Decl. ¶ 7, Ex. E.) There was no longer a civil proceeding against the insured pending. Likewise, under section 1, there was, at the time of receipt of the courtesy copy of the Summons with Notice , no longer a demand for damages against the insured. Thus, there was no claim made against the insured during the 2008 - 09 Policy.

Defendant alternatively argues that the Summons with Notice was a Claim because it was a pleading similar to a complaint, thereby satisfying the definition of a Claim as set forth in the Policies. (Def.'s Mot. at 17-18.) Specifically, Defendant argues that a Summons with Notice provides the same type of information as a complaint and,

 therefore, it is a similar pleading to a complaint. (*Id.*) That argument only addresses  one of the three prongs required to satisfy the second definition of "Claim":  "any civil, judicial, administrative, regulatory or arbitration proceeding [ ] *commenced by the service* of a complaint or  similar pleading and initiated against the insured(s), . . ." (Emphasis added.)

Accepting the argument that the Summons with Notice is  equivalent to a pleading, would require the temporary suspension of common sense. Even under the relaxed notice pleading standards, by no stretch of the imagination could the information contained in the Summons be considered similar to a pleading. For example, the Summons merely states: "Take notice that the nature of this action and the relief sought is damages for breach of contract, unjust enrichment, breach of fiduciary duty, as well as declaratory and equitable relief." (Doc 17-7)  No information is provided as to the nature of the

contract, the parties to said contract, what duties were imposed on the breaching party and who, how, and when the contract was breached and who was damaged and in what amount. Merely listing a few causes of action doesn't transform that summons into the functional equivalent of a pleading.

However, that isn't the only deficiency in the Summons with Notice. As Plaintiff points out, it was never served. (Pl.'s Opp'n at 7-8.) A "claim" under the policy is a written demand for monetary damages "<u>commenced by receipt</u> of such demand by the Insured(s)" (Emphasis added) In the court's view, that argument is dispositive. The fact that the Summons with Notice was not served on or received by Plaintiff until its underlying complaint was dismissed is fatal to Defendant's argument that there was a Claim under either definition. The Policy plainly requires service to satisfy the definition of a Claim. (UF No. 3 and 7, Sarris Decl. ¶¶ 3-4, Exh. A-B.

Finally, Defendant argues that the Summons with Notice was a Claim because Executive Perils, Plaintiff's insurance broker, referred to it as a claim and requested a claim number when it forwarded the Summons with Notice to Defendant (UF No. 12; Sarris Decl. ¶ 10, Ex. H). (Def.'s Mot. at 17.) Defendant then issued a claim number, but determined that the Summons with Notice presented no exposure to its layer of coverage. (UF No. 12; Sarris Decl. ¶ 10, Ex. H.) The producing broker's characterization of the Summons with Notice is of no consequence. The broker is neither a party to the agreement nor authorized as an arbiter of disputes concerning construction of the policy.

To the extent Defendant argues that the broker's characterization of the Summons with Notice constituted a change in the policy, we are instructed by Paragraph XII of the policy which provides in part:

> . . . The Insured agrees that this Policy embodies all agreements existing between it and the Insurer or any of its agents relating to this Policy. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this Policy or estop the Insurer from asserting any right under the terms of this policy, <u>nor shall the terms be waived or changed except by written endorsement or rider issued by the Insurer to form a part of this Policy.</u> (Emphasis added.)

Defendant's argument that a broker's mere characterization of a document effected a change in the policy definition of Claim, despite the policy language to the contrary, is therefore rejected.

10

Accordingly, the Court finds that the Summons with Notice did not constitute a Claim pursuant to the plain language of the policy. Thus, no Claim was made during the 2008-09 policy period.

### b. Notice of Wrongful Act(s) Pursuant to the Terms of the Policy

Defendant contends the allegations in the Summons with Notice gave notice of "specific Wrongful Act(s)" that Plaintiff allegedly committed. (Def.'s Mot. at 22-23.) "Wrongful Act" has a specific meaning with reference to the policies. That meaning is found in Section II:

> Z. **Wrongful Act(s)** means:
>
> (1) with respect to Insuring Agreements A(1), B(1) and C., any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or negligent act by the **Insured Persons(s),** or by any person for whom the **Insured Organization** is legally liable;
>
> (2) with respect to Insuring Agreements A(2), A(3), B(2) and B(3), any actual or alleged breach of duty, neglect, error, misstatement, misleading statement omission or negligent act by the **Insured Person(s)** in its capacity as such, or any matter claimed against it solely by reason of its status as an **Insured Persons(s)**

The policy provides coverage for liability for wrongful acts. Assuming that the allegations of breach of contract and breach of fiduciary duty qualify as alleged breaches of duty, and assuming further that the allegations are directed at an insured person, the policy imposes certain duties upon the insured as preconditions to triggering coverage.

The relevant provision in the Policies, Section VII.B., details three requirements imposed upon the Insured once the Insured becomes aware of any "specific Wrongful Act". The Insured must provide written notice to the insurer of: (1) the specific Wrongful Act; (2) the consequences which have resulted or may result from the Wrongful Act(s); and (3) the circumstances by which the Insured first became aware thereof, then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Policy to have been made at the time such notice was first given.". (UF No. 6; Sarris Decl. ¶ 3, Ex. A.) Notice provisions in "claims made" policies are strictly construed because notice determines if coverage is available under such policies. *Am. Cas. Co. Of Reading, PA v.*

11

*Continisio*, 17 F.3d 62, 69 (3d Cir. 1994); *FDIC v. Barham*, 995 F.2d 600, 604 n.9 (5th Cir. 1993). As applied to this case, notice of the alleged wrongful act and written notice to the insurer may ultimately dictate which policy must respond in this matter.

To be clear, the inquiry at this point is not whether the Summons with Notice constituted a "claim" - it did not - but whether the "insured first became aware of any specific wrongful act" with the receipt of the Summons with Notice on or about April 2, 2008. If so, did the insured give written notice to the insurer of the nature of the specific wrongful act, the consequences which have resulted or may result from the wrongful act, and the circumstances by which the insured first became aware thereof.

There can be little good faith disagreement that the so-called "notice" – stating only "[t]his is just for notice purposes as this has been discontinued and there are no allegations" (UF No.11) – inadequately complies with the policy's requirements of notice of Wrongful Act(s) Granted, the Summons with Notice alleged breach of contract or fiduciary duty, but provided no information regarding the particular acts which led to the lawsuit being filed, the people who committed the acts and when the underlying acts occurred. *See F.D.I.C. v. Caplan*, 838 F. Supp. 1125, 1130 (W.D. La. 1993) (holding notice insufficient because it merely recited the language of the policy's notice provision and provided no information regarding "the types of practices alleged to constitute 'wrongful acts,' the agents, officers, or directors alleged to be involved in wrongdoing, or the time period during which the allegedly wrongful acts took place"); *see also McCullough v. Fid. and Deposit Co.*, 2 F.3d 110, 113 (5th Cir. 1993) (holding that insured informing insurer that it had received a cease and desist order was insufficient notice because it did not detail the "particular subsidiary involved, the particular agents, officers, or directors involved, the time period during which the events occurred, the identity of potential claimants, and the specific unsound practices made the basis of the order").

While the Summons with Notice provided a list of claims and the parties involved in the 2008 Proctor lawsuit, a recitation of causes of action, without more, cannot be sufficient to provide notice pursuant to the Policies. *See Cont'l Ins. Co. v. Metro-Goldwyn-Mayer, Inc.*, 107 F.3d 1344, 1347-48 (9th Cir. 1997) (finding notice sufficient because it included a complaint from a related but separate lawsuit that detailed the particular wrongful acts and the possible claims that prospective plaintiffs could bring from those acts). The Court finds this provided insufficient notice of "specific Wrongful Act(s)."

Despite the utter failure of Plaintiff to provide the notice required by Policy Section V11.B,

1 defendant raised no cry of non-compliance. Once it became clear that the 2008-09 Policy had been
2 exhausted by payment of a settlement in a n unrelated matter, the reason for Defendant's seeming
3 benevolence became equally clear.

4     Defendant takes the position that the Summons with Notice advised of specific Wrongful Acts,
5 and by Plaintiff providing a copy of the Summons with Notice to Defendant, it had complied with its
6 obligations under Section VII.B. That being so, when Plaintiff became involved in litigation with Proctor
7 in 2010, defendant invoked that provision of the Policy under Section V. Limit of Liability, Retentions
8 and Date of Claim, Paragraph D which provides as follows:

9     More than one Claim involving the same Wrongful Act(s) or Interrelated Wrongful Acts shall be
10     deemed to constitute a single Claim and shall be deemed to have been made at the earliest of the
11     following times:

12     (1)     the time at which the earliest Claim involving the same Wrongful Act(s) or Interrelated
13         Wrongful Acts is first made, or
14     (2)     the time at which the claim involving the same wrongful Act(s) or Interrelated Wrongful
15         Acts shall be deemed to have been made pursuant to Clause VII.B

16     So little is evident of the facts underlying the 2008 Summons With Notice that it is impossible
17 to opine that there is an interrelation of wrongful acts. Yet Defendant appears perfectly willing to make
18 that connection.

19     An additional troubling circumstance is Defendant's willingness to critically analyze the facts in
20 light of the policy language. For example, *t*he Preamble to the Insuring Agreement provides in part:
21 Coverage under this policy is limited to liability for wrongful acts <u>for which claims are first made</u> while
22 the policy is in force and which are reported to the insurer no later than sixty days (60) days after the
23 termination of the policy.(Emphasis added.) The only claim made for wrongful acts was during the 2009
24 - 2010 policy. While reasonable minds might differ as to whether the Summons and
25 Notice provided the insured with reason to believe that it was being accused of a wrongful act, they were
26 not <u>acts for which claims were made</u>. Consequently, these acts did not trigger coverage under the policy
27 in effect when the insured was first alerted to the alleged wrongful act(s). The policy expressly provides
28 that the policy is limited to liability "for wrongful acts for which claims are" made." No claim was ever
    made against the insured (plaintiff) during the 2008 - 2009 policy. This is not open to serious question.

The real question is why Defendant has readily acknowledged coverage under the 2008-09 Policy when clearly there are facts which indicate that policy was never triggered. The answer to this question supplies the answer to the question which follows.

### 2.    WHETHER DEFENDANT ACTED IN BAD FAITH BY FAILING TO DEFEND THE PROCTOR ACTION

Defendant argues that Plaintiff's bad faith claim fails because there was a "genuine dispute" regarding coverage for the Proctor Action. (Def.'s Mot. at 23-25.) As a general proposition, an insurer does not act in bad faith if there exists a genuine dispute as to the insurer's coverage interpretation. Plaintiff contends that summary judgment is premature because the "genuine dispute" doctrine is inapplicable and further discovery is needed because Defendant's declination letters suggest bad faith. (Pl.'s Opp'n at 12.)

"The term 'bad faith,' as used in the context of an insured's claim against his or her insurer, is simply a shorthand reference to a claimed breach by the insurer of the covenant of good faith and fair dealing that is implied in every contract of insurance." *Bosetti v. U.S. Life Ins. Co. in City of New York*, 175 Cal. App. 4th 1208, 1235 (Ct. App. 2009). An insurer acts in bad faith when its breaches its policy contract and the warranty of good faith and fair dealing. *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 5th 1443, 1469 (Ct. App. 2011). "The linchpin of a bad faith claim is that the denial of coverage was unreasonable." *McCoy v. Progressive West Ins. Co.*, 171 Cal. App. 4th 785, 793 (Ct. App. 2009). If a genuine dispute as to coverage existed at the time benefits were denied, then the court may conclude as a matter of law that the insurer did not act unreasonably. *Guebara v. Allstate Ins. Co.*, 237 F. 3d 987, 992 (9th Cir. 2002).

The basis for defendant's coverage denial focuses exclusively on the 2008-09 Policy. For it is this policy which has been completely exhausted by payments in connection with the settlement of the *Joseph M. Boskolvich v. Aletheia Research and Management, peter Eichler, et al.* matter. Defendant's coverage analysis funnels any and all possibility of coverage into this exhausted policy. For example, Defendant considers the 2008 Summons with Notice a claim for money notwithstanding the fact that no such demand was made; that at the time the document was finally provided to the Insured, the matter had been dismissed and that when the Summons was provided to Defendant, the Dismissal (Discontinuance) was provided as well.

14

When suit was filed in 2010, first in New York, then in Los Angeles, Defendant has taken the position that the 2010 lawsuits relate back to the 2008 Summons with Notice, that both arise out of the same facts, transactions or series of events. Considering that only bare causes of action are identified in the Summons and Notice, it would be impossible to ascertain if there is a factual basis for Defendant to reach the conclusion it has.

In addition, even assuming that there are present Interrelated Wrongful Acts, the policy imposes duties on the insured to report not only the allegation of the wrongful act, but to identify the specific wrongful act allegedly committed, the consequences which have resulted from the wrongful act, and the circumstances by which the insured first became aware of such act. By no reasonable stretch of the imagination did Plaintiff comply with the notification obligations under the policy.

Defendant overlooks this lapse and simply takes the position that these so-called interrelated wrongful acts relate back to the "claim" which was purportedly first made against the 2008-09 Policy. However, no claim was made against the 2008-09 policy. This is not a disputed legal issue.

The transmittal by which the Summons was sent to the Defendant states: "Attached please find the summons and <u>Notice of Discontinuance</u> for a claim for this insured. This is just for notice purposes as this has been discontinued and there are no allegations." (Emphasis added.) (Doc 17-11). The plain language of this transmittal is ignored. In point of fact, this did not constitute a claim and no claim had in fact been made against the 2008-09 Policy. Defendant attempts now to channel the 2010 lawsuits into the exhausted 2008-09 Policy is not, in the court's view, an honest but mistaken coverage determination, but an effort to deprive its insured of coverage for which it had paid premiums.

Defendant had provided continuous coverage to Plaintiff through and including the period during which claims for damages were in fact made against Plaintiff. Defendant, however, conducted no analysis of whether the lawsuits should properly be covered by the 2009-10 Policy. That cannot be squared with its obligation to place its insured's interest on a par with its own.

Considering the fact that the 2009-10 Policy covers "reasonable and necessary legal fees and expenses" Plaintiff was entitled to an honest appraisal of its entitlement to coverage under that policy. The court cannot conclude that it received such an honest and objective appraisal. Defendant argues that it "thoroughly reviewed the relevant claim materials, as they became available, investigated the circumstances surrounding the 2008 Summons with Notice and the subsequent Proctor Claims and

Director Action, and made a determination of coverage based on the documents and facts presented to them." (Doc 17, Def Mot, p. 25.)

**DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

Defendant seeks summary adjudication of a number of issues pertaining to the 2008-09 Policy. They are addressed in turn:

Issue 1: The 2008 Summons With Notice is a "Claim" as defined in the 2008-09 Policy. For the reasons discussed at length, the court has concluded that no claim was made during the 2008-09 Policy period. Summary Adjudication on this issue is DENIED.

Issue 2: The Proctor Claims Relate Back to the 2008-Summons With Notice, and Therefore are One Single Claim. The coverage provided under the 2008-09 Policy is limited to liability "for wrongful acts for which claims are first made while the policy is in force." As discussed above, there were no wrongful acts for which claims were first made under the 2008-09 Policy for *Proctor Action* to relate back to. Summary Adjudication on this issue is DENIED.

Issue 3: The 2008 Summons With Notice is a Notice of Circumstances Pursuant to Section VII of the Policy. Section VII speaks to the Notification obligations on the Insured to advise the insurer in writing of allegations of specific wrongful acts, the consequences which have resulted from such acts and the circumstances by which the insured first became aware thereof. The Summons provided no allegations of specific wrongful acts and Plaintiff's notification failed to comply with the provisions of this section. Moreover, as framed, this is not an issue, but an assertion of fact. On this basis Summary Adjudication on this "issue" is DENIED.

Issue 4: The Proctor Claims Relate Back to the 2008 Summons With Notice, and Therefore Are One Single Claim Under the Policy. This is the same issue as Issue 2 and on that basis Summary Adjudication on this issue is DENIED.

Issue 5: Defendant Does Not Have a Duty to Advance Defense Costs Because There Is No Coverage Available for The Proctor Claims Under the 2008-09 Policy. The court agrees that Defendant has no duty to advance defense cost, but not because there is no coverage available under the 2008-09 Policy, but because the policy expressly provides that it does not advance defense costs. It is on this latter basis that this issue is GRANTED.

Issue 6: Defendant Does Not Have to Pay Defense Costs Because There is No Coverage Available For

The Proctor Claims Under the 2008-09 Policy. To the extent this issue is directed to the question as to whether Defendant is obligated to pay reasonable defense costs incurred in the Proctor action by allocation of the claim to the 2008-09 Policy

Summary Adjudication on this issue is GRANTED. However, it should be clear that the court finds <u>Defendant is obligated to reimburse</u> Plaintiff for reasonable and necessary legal fees incurred in the defense of the Proctor lawsuit.

<u>Issue 7</u>: Defendant Has Not Breached The Insurance Contract Because There is No Coverage Available Under the 2008-09 Policy. To the extent this issue addresses breach of the 2008-09 Policy only, summary adjudication is GRANTED on this issue. However, to the extent it includes all policies issued by Defendant to Plaintiff, the request for summary adjudication on this issue is DENIED.

<u>Issue 8:</u> Defendant Has No Duty to Indemnify Aletheia Because There Is No Coverage Available Under the 2008-09 Policy. To the extent this issue is directed to the question as to whether Defendant is obligated to make any loss payments against the 2008-09 Policy, Summary Adjudication on this issue is GRANTED. However, to the extent it includes all policies issued by Defendant to Plaintiff, the request for summary adjudication on this issue is DENIED.

<u>Issue 9</u>: Defendant Has Not Acted in Bad Faith By Failing to Defend The Proctor Claims Because There Is No Coverage Available Under the 2008-09 Policy. The claim was made against the 2009-10 Policy which Defendant failed to analyze for potential coverage. Instead, Defendant deliberately channeled all potential coverage toward the exhausted 2008-09 coverage clearly with the knowledge that doing so would enable it to escape any indemnity obligations. This is not, in the court's view a reasonable but mistaken coverage position. Plaintiff is correct, that absent discovery on this issue it is premature to assess whether Defendant's erroneous position on its defense obligation , in addition to being unreasonable, was in bad faith. Summary Adjudication on this issue is DENIED.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

<u>Issue</u> 1: Defendant Was Obligated to Defend Plaintiff Against a First Amended Cross-Complaint filed by Proctor. The Policy expressly provides that "this policy does not provide for any duty or obligation on the part of the insurer to defend any insured(s)" However, the policy does contemplate payments of defense costs incurred. Specifically, the policy is what is sometimes referred to as a burning limits

17

policy, i.e. one whose limits of liability are eroded by the payment of legal expenses[2]. Specifically, the policy Preamble states:

> THE LIMITS OF LIABILITY AVAILABLE TO PAY LOSS, INCLUDING JUDGMENT OR SETTLEMENT AMOUNTS, SHALL BE REDUCED BY AMOUNTS INCURRED FOR COSTS, CHARGES AND EXPENSES AS PROVIDED FOR UNDER THE POLICY. FURTHER NOTE THAT AMOUNTS INCURRED FOR COSTS, CHARGES AND EXPENSES SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION AMOUNT.

The insertion of this language in the policy is an indication that payment of defense costs was clearly anticipated and included in the coverage. Coverage A and B are entitled Professional and Management Liability Insurance and Corporate Reimbursement.

The Insuring Agreement in the 2009-2010 Policy, against which the Proctor claim was tendered, states that the policy will pay for covered loss, which is defined as, among other things, Costs, Charges and Expenses, which includes legal fees and expenses.

The Loss(s) which the insurer promises to pay consist of "damages, judgments, settlements and **Costs, Charges and Expenses** incurred by the Insured(s) . . .. (Doc 17-6, ¶ II.S)

"Costs, Charges and Expenses" is defined in the policy to include "reasonable and necessary legal fees and expenses."  (Doc 17-6, ¶ II. D).

To the extent this issue is directed to the obligation of Defendant to reimburse Plaintiff for the defense costs incurred in the Proctor lawsuit, Summary Adjudication on this issue is GRANTED.

Issue 2:  Having Refused to Defend Plaintiff Against the Proctor Claims, Defendant Has Breached its Contract and Has No Right to Control Plaintiff's Defense and Is Obligated to Pay All Reasonable Attorneys' Fees and costs Incurred in Defense of the Proctor Cross-Complaint.  This actually is three separate issues. First, Defendant never had the right to control Plaintiff's defense. That is the other side of the "no duty to defend" coin.

As for breaching the insurance contract, the court agrees that the 2009-10 Policy has been breached. Defendant has never taken the position that coverage for the Proctor lawsuit was not available due to the applicability of a policy exclusion. Defendant simply never analyzed coverage under the 2009-

---

[2]. Wayne Baliga, Insurance Law: Understanding the ABC's, 652 PLI/LIT 463, 477 (2001)

10 Policy.  Either intentionally or inadvertently, Defendant overlooks  language in the policy which makes it clear that coverage is afforded for attorney's fees.  The policy requires the insurer to pay Losses arising out of covered activity by the insured.  The limits of liability available under the policy can and will be eroded by payment of "reasonable and necessary legal fees and expenses incurred by the Insured in defense of any Claim."

For Defendant to take the position that the policy expressly excludes payment of attorneys fees is a clear mis-reading of its own policy language.  Even applying the genuine dispute rule, the court cannot find that there was a good faith and earnest belief on the part of Defendant that legal expenses were excluded under this policy.  Failure to pay those costs and expenses is a breach of the insurance contract. Summary Adjudication on this issue is GRANTED.

## V. CONCLUSION

In light of the foregoing reasons, Defendant's Motion for Summary Judgment, or in the alternative, Motion for Summary Adjudication, is **DENIED** in part and GRANTED in part.  As to Plaintiff's Motion for Summary Adjudication, the Court **GRANTS** Plaintiff's motion requiring Defendant to pay reasonable attorneys fees and costs incurred in defending the Proctor Action.   The court further finds that the Defendant's failure and refusal to reimburse Plaintiff for reasonable and necessary defense costs incurred in defense of the Proctor cross-complaint was a breach of the 2009-10 Policy.  The Court

The Court therefore **GRANTS** Plaintiff's Motion finding that Defendant has breached the 2009-10 Policy.  Plaintiff shall lodge a judgment reflecting this outcome forthwith.

**IT IS SO ORDERED.**

December 19, 2011

Otis D. Wright, II
United States District Judge